EDWARD AUSTIN, Plaintiff in Error, *vs.* SAMUEL G. LORING, Defendant in Error.

1. *Estoppel—Sale of land under execution—Payment of surplus to defendant in —Claim of to land on ground of failure of service.*—Where defendant in an execution, knowing of a defect in service on him in the original suit, stands by at the sale, and not only permits his land to be sold in satisfaction of his debt, but demands and receives the surplus of the proceeds, he is estopped from laying claim to the land; and the purchaser will be protected, if the proceedings are regular. And one taking a quit-claim from defendant, cannot, in such case, claim as an innocent purchaser.

### *Error to DeKalb Circuit Court.*

*John D. Strong*, for Plaintiff in Error.

Hewitt, by standing by and permitting the sale and receiving the surplus and allowing the sheriff to make his deed to plaintiff, is estopped from questioning plaintiff's title, unless it appear that Hewitt was himself ignorant of the defect in the service. (19 Ill., 295; 9 Barr, 299; Stroble vs. Smith, 8 Watt, 280; Smith vs. Worden, 7 Penn. St., 424; Herm. Estop., 348, 349; Lange's Appeal, 53 Penn. St., 383; Spragg vs. Shriver, 25 Penn. St., 282; Merritt vs. Howe, 5 Ohio St., 307; Mitchell vs. Freedley, 10 Penn. St., 208; Crowell vs. McConkey, 5 Pa., 196; Skinner vs. Stouse, 4 Mo., 93; Bales vs. Perry, 51 Mo., 449; Dean vs. Connelly, 6 Pa., 234; Newman vs. Hook, 39 Mo., 213; Rice vs. Bunce, 49 Mo., 234; Deford vs. Mercer, 24 Ia. 118; Johnson vs. Fritz, 44 Pa., 472; Bocock vs. Pavey, 8 Ohio St., 270; State vs. Stanley, 14 Ind., 109; Maple vs. Kussart, 53 Penn. St., 348; 1 Rawle, 163; 7 Watts & S., 127; 5 Barb., 168; 7 Harr., 424; 6 Harr., 346; 8 Wright, 449; 1 Casey, 282; Pockman vs. Meatt, 49 Mo., 349.)

It makes no difference in this case that the purchaser might have ascertained the defect in the service. He was put off his guard by Hewitt, and the latter cannot have his money and the land as well.

It appears both from the pleadings and the proof, that defendant and Hewitt were in privity, and hence if Hewitt is estopped

to deny plaintiff's title, defendant is likewise estopped. (Thistle vs. Buford, 50 Mo., 278 ; Chouteau vs. Goddin, 39 Mo., 229.)

*Samuel G. Loring*, for Defendant in Error.

The petition does not state a cause of action. It shows that the plaintiff bought the land with notice, that the court, rendering the judgment against Hewitt, had no jurisdiction of the subject matter of the action, or the person of the defendant. (Downing vs. Still, 43 Mo., 321.) The purchase was the result of plaintiff's own inattention and folly. (Bank of Mo. vs. Bray, 37 Mo., 194 ; Valle vs. Fleming, 29 Mo., 163.)

There could be no subsequent ratification of the sale by Hewitt, so as to make it binding upon him, or give this plaintiff any equities against the land, unless the sheriff, at the time of the sale represented himself as Hewitt's agent, and plaintiff bought under that belief, or the sale was made under a valid and subsisting judgment against Hewitt, and the proceeds went to the use and benefit of Hewitt, and defendant had knowledge of all the facts at the time he purchased, and received a deed. (1 Pars. Cont., 4 ed., p. 47.) But the petition shows no such state of case. As for the sheriff he was simply a ministerial officer, nothing more. (Rice vs. Bunce, 49 Mo., 235 ; State of Mo. vs. Lewis, 52 Mo., 396 ; Haley vs. Bagley, 37 Mo., 365.)

WAGNER, Judge, delivered the opinion of the court.

The material averments in the petition are, that on and prior to the 10th day of March, 1865, one Robert A. Hewitt was the owner in fee simple of a certain piece of land in DeKalb county, Missouri, and that at the March term, 1865, of the circuit court in that county, a judgment was rendered against him in favor of one Meek ; that an execution was duly issued on the said judgment, and that after giving the proper notices, the sheriff, at the September term, 1866, proceeded to sell the land to satisfy the judgment and costs ; that there was a defective service of process on Hewitt, so that the judgment was not legally binding upon him ; that at the sale Hewitt was present by his lawfully author-

ized agent, and well knew that said sale was not binling in law upon him so as to convey title to the land, but that he elected to affirm the sale ; that plaintiff, believing at the time that the sale was valid, paid his money thereon, and that Hewitt well knowing all the facts and that plaintiff had paid his money for the land under such belief, then and there affirmed the sale, and demanded and received from the sheriff the surplus of $150 of the proceeds of the sale remaining in the sheriff's hands, and there consented to the plaintiff's receiving a deed for the land, that he might have and possess the same as his property ; that afterwards Hewitt pretended to sell the land to the defendant, and by quit-claim deed relinquished to him all his pretended interest therein ; that at the time of, and before the conveyance to defendant, he had actual notice of the sale made by the sheriff and the making of the deed, and that the plaintiff had in good faith paid his money for the land, and that Hewitt had waived his right and claim to the same, and the title thereto, and that he had approved the said sale and received and appropriated the proceeds thereof; that, with a full knowledge of all these facts, defendant received his conveyance and took possession, and pretends to be the legal owner of the land.

The prayer was, that there should be a decree confirming the title in the plaintiffs, and divesting it out of the defendant.

There was a motion to strike out all the substantial and material allegations in the petition, which the court sustained ; and the plaintiff, electing to abide by his petition, and refusing to amend, brings the case here by writ of error. The motion was in reality a demurrer, and the action of the court stands on the judgment sustaining it.

The defendant stands here precisely in the position that Hewitt, his grantor, would if he were sued and had never parted with his interest in the land. It is alleged that he bought with full notice of the facts, which must be taken to be conceded, as the case is now presented. Besides, he purchased merely by quit-claim, and is not warranted in setting up the defense of an innocent purchaser without notice.

The only question is, whether Hewitt, in standing by silently and seeing the plaintiff bid off the property, and then permitting him to pay for it, in satisfaction of his debt, and demanding and receiving the surplus of the proceeds, estopped himself from averring anything contrary to the validity of the sale. The doctrine of estoppel by matter *in pais* is well established. It rests on the principle, primarily, that it would be a fraud in a party to assert what his previous conduct had denied, when others have acted or changed their condition on the faith of that denial. (Chouteau vs. Goddin, 39 Mo., 229; Campbell vs. Johnson, 44 Mo., 245; State vs. Laies, 52 Mo., 396; Thistle vs. Buford, 50 Mo., 278; Pockman vs. Meatt, 49 Mo., 349.) The fraud may exist in the intention of the party estopped, or in the effect of the evidence which he attempts to set up. If no one has been misled to his damage, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contradicting them, and a party will not be allowed to avail himself of an estoppel when he knew or had the same means of knowledge as the other party. (Rice vs. Bunce, 49 Mo., 349; Bates vs. Perry, 51 Id., 449.) But no person will be allowed to adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derived the benefit. When those who are entitled to avoid a sale adopt and ratify it, equity will estop them from afterwards setting it aside.

When a sale of land is made no person can be permitted to receive both the money and the land. And it has been held, in the application of this principle, that it makes no difference whether the proceedings under which the sale occurs are voidable or wholly void, in consequence of the want of jurisdiction. In 21 Smith's Lead. Cas. (5 Am. Ed.), p. 662, the author says that when those who are entitled to avoid a sale adopt and ratify it, by receiving the whole or any part of the purchase money, equity will preclude them from setting it aside subsequently for reasons that are too plain for statement. (Stroble vs. Smith, 8 Watts 280; The Commonwealth vs. Sherman's Adm'rs, 6 Har., 343; Smith vs. Worden, 7 Ill., 424.)

"When a sale is made of land," said Lewis, J., in Smith vs. Worden, "no one can be permitted to receive both the money and the land. Even if the vendor possessed no title whatever at the time of the sale, the estoppel would operate upon a title subsequently acquired. It was held by this court, in the Commonwealth vs. Sherman's Adm'rs, that equitable estoppels of this character apply to infants as well as adults, to insolvent trustees and guardians as well as to persons acting for themselves, and have place as well when the proceeds arise from a sale by authority of law as when they spring from the act of the party. A party will not be allowed to indulge in bad faith and make innocent purchasers the sport of his tricks. When a sale is void the reception of the purchase money renders it valid. (Aderman vs. Yord, 1 Rawle, 171; Furness vs. Ewing, 2 Barr, 479.) These principles are founded on elevated morals, common honesty and pure good faith, and are co-extensive with the principles of the mischief which they are designed to counteract. Where a party has taken the fruits of a judicial proceeding, he should not afterwards be heard to question it. Though an estoppel may debar the truth in a particular case, yet, as was said by the Supreme Court of the United States in VanRanselaer vs. Karney (11 How., 326), it imposes silence on the party only when in conscience and honesty he should not be allowed to speak."

There can be but one sentiment in reference to the justice of this case, and the law utters the same voice. Hewitt saw his property sold to satisfy his debt. The purchaser had the means of knowing whether the proceeding was regular, and so far bid at his peril, but he paid his money in good faith and Hewitt, with a full knowledge of all the facts, not only allowed him to pay off and satisfy the judgment, but he demanded and received the surplus which the plaintiff bid, and which he paid to the sheriff for his use and benefit. By his actions he ratified the sale, and estopped himself from laying any claim to the land. I have been unable to find any case which countenances his claim, and I apprehend none can be found.

The court erred in its ruling, and the judgment will be reversed and the cause remanded. The other judges concur, except judge Vories, who is absent.