## AUGUSTA M. ZINKE v. KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

In Banc, September 7, 1918.

1. ACCORD AND SATISFACTION: Part Payment: Receipt in Full: Consideration: Doubt as to Amount Due. A part payment of a debt unquestionably due will not discharge the entire debt, even though receipted in full and based upon an understanding or agreement

that it is payment in full, for there is no consideration to support the agreement. But where there is an honest doubt between the parties as to the amount due, and after due consideration the creditor yields to the debtor's views and accepts what the debtor concedes to be due and gives a receipt in full, and there is no fraud or other ground for equitable relief, the settlement is binding, for the reason that it comes within the principle of accord and satisfaction.

2. ———: ———: Consideration: Receipt Not Necessary. To make a settlement binding on the creditor as an accord and satisfaction, neither a receipt in full nor even an agreement to accept a part for the whole is necessary, if the creditor knows there is reasonable doubt as to the amount due and accepts the part tendered in full satisfaction.

*Certiorari.*

WRIT QUASHED.

*R. P. & C. B. Williams* for petitioner.

*Durham* and *Durham* for respondent.

WOODSON, J.—Augusta M. Zinke brought a suit against the Knights of the Maccabees of the World to recover $421.60, the balance alleged to be due her on a benefit certificate issued by it on the life of Ferdinand G. Zinke, her husband. She recovered judgment for the amount sued for, and the defendant appealed the cause to the St. Louis Court of Appeals, which affirmed the judgment of the circuit court.

After taking the proper preliminary steps the petitioner applied to this court for a writ of *certiorari* directed to the Court of Appeals, which was duly issued, and in due time return was properly made thereto.

No point is made upon the pleadings, so they will be put aside.

The facts are fairly stated by the Court of Appeals in the opinion written by it, which we here copy:

"Plaintiff instituted this action before a justice of the peace by filing a statement in which she claimed that she was beneficiary in a benefit certificate issued

on the life of her husband, Ferdinand G. Zinke, in the sum of $1000; that the insured departed this life during the time that said benefit certificate was in force, and that the association paid plaintiff the sum of $578.40, leaving a balance of $421.60 due plaintiff, which balance had been previously demanded and payment refused. From a judgment in favor of plaintiff in the justice court the defendant appealed. On a trial *de novo* in the circuit court before a judge and jury a judgment was entered in favor of plaintiff and against the defendant in the sum of $421.60, and defendant in due course appealed.

"It is admitted that the defendant, Knights of the Maccabees of the World, is a corporation, successor to the Supreme Tent, Knights of the Maccabees of the World, and is a fraternal benefit association organized under the laws of the State of Michigan and authorized to do business in the State of Missouri; that the defendant had issued, on the life of Ferdinand G. Zinke, its policy No. 20,410, and that at his death one assessment on the membership, not exceeding in amount the sum of $1000, was to be paid thereunder as a benefit to plaintiff, Augusta M. Zinke, wife of the insured, upon satisfactory proof of his death and the surrender of the said certificate; that one assessment on the membership of the defendant company at the time of the death of Ferdinand G. Zinke would have amounted to more than the sum of $1000. The application of the insured for membership in the defendant order contained the following:

" 'I also agree that should I commit suicide, in contravention of the laws of said Supreme Tent, whether sane or insane at the time, that this contract shall be null and void and of no binding force upon said Supreme Tent.

" 'This application and the laws of said Supreme Tent now in force or that may hereafter be adopted, together with my certificate of membership, are made the contract between myself and the said Supreme Tent,

and I for myself and my beneficiary agree to conform to and be governed thereby.'

"Section 379 of the by-laws of the defendant in force and effect at the time of the decease of the insured, provides that:

' " 'No benefit shall be paid on account of the death of a member who shall die by his own hand, whether sane or insane; provided, however, that the beneficiary named in the life benefit certificate, or the person legally entitled to the benefit, shall receive an amount equal to twice the amount contributed to the Life Benefit Fund by the member during his lifetime, but not in excess of the face of the certificate.' ,

"There is no controversy but that Ferdinand G. Zinke, the insured, paid the defendant association in monthly rates on said certificate up to the time of his death $289.20; that at the time of his death his dues to the association were paid, and that he was in good standing; that on or about the 5th day of June, 1913, some time after the death of the insured, the defendant association paid to Augusta M. Zinke, the plaintiff, the sum of $573.40, being twice the amount of the monthly rates contributed to the Life Benefit Fund by Ferdinand G. Zinke during his lifetime.

"The record shows that the insured died on the 31st of March, 1913, and that the beneficiary, plaintiff herein, furnished the defendant preliminary proofs of death, consisting of her own affidavit, the affidavit of the attending physician, the verdict of the coroner's jury, affidavits taken at the coroner's inquest, and the sworn statement of the officers of the subordinate lodge of which the insured was a member. Each of these papers gave the cause of the death of the insured as suicide. The affidavit of the beneficiary contained the following: 'Date of death,—March 31, 1913;' 'Remote cause of death? Had trouble with his head for about six weeks;' 'Immediate cause of death? Not of sound mind, suicide.' The defendant association upon receiving the preliminary proofs of death issued its check, payable to the beneficiary, in the sum of $578.40, which

is admitted to be double the amount the insured had paid in during his lifetime. This check, together with the receipt prepared by the defendant association, was sent forward to the officers of the local lodge, which it appears was customary, with instructions to turn the same over to the plaintiff upon the execution of the receipt.

"It appears that plaintiff did not accept the check immediately, but consulted the officers of the local lodge and her attorney, and took the matter under advisement for some days. Plaintiff's attorney advised her 'that if it should be found by a trier of the fact that suicide was the cause of her husband's death, that amount was all that was due under the policy. I advised her further that if he had not committed suicide, the full amount, namely, $1,000, would be coming to her; also advised her concerning the necessary steps that it would take in order to test that question in the courts. I tried to put the whole facts and all the circumstances before her for her decision as to whether or not she would accept the amount offered, or fight for the full amount of the policy, $1,000.'

"It further appears that there was no communication between the plaintiff and the defendant, from the date that defendant company mailed the check for $578.40, together with receipt attached, to the officers of the local lodge. The receipt which plaintiff executed at the time she accepted the check, is as follows:

" 'Received from the Knights of the Maccabees of the World the sum of $578.40, that being twice the amount of monthly rates contributed to the life Benefit Fund of Ferdinand G. Zinke, late a member of Tent No. 116, State or Province of Missouri, and the full amount for which the association is liable under its laws governing suicide claims. Warrant No. 34275.

" 'Augusta M. Zinke,

" 'Widow and Beneficiary of Ferdinand G. Zinke.'

"Plaintiff signed the above receipt on the 7th day of June, 1913, and thereafter, on the 21st day of July, 1913,

wrote a letter in German to the defendant, of which letter the record states a correct translation to be as follows:

" 'Gentlemen of the Macabees:

" 'I ask again if the Gentlemen of the Maccabees will pay the rest of $400, which I can claim under the Missouri law; if not, I will go to the courts. Why can rich people receive their money, where the husband shot himself, and have received their money of $8,000, and a poor woman, who is without any help, shall be cheated? As my husband was already at the edge of the grave; that which he did, he did without knowledge, as he was always afraid of death.

" 'Respectfully

" 'Widow, AUGUSTA M. ZINKE.'

"On August 4, 1913, the defendant, through the Supreme Record Keeper, mailed the following answer in reply to plaintiff's letter.

" 'Mrs. Augusta M. Zinke,

St. Louis, Mo.

" 'Dear Madam:

" 'Your letter of July 21st, in relation to your husband's benefit insurance, has been received and in reply permit us to say that at the time your husband joined the Knights of the Maccabees of the World, the laws provided that in case of death by suicide, whether sane or insane, his beneficiary should be entitled to receive twice the amount he had contributed to the. Life Benefit Fund. This was paid you in April, last. There is nothing more you're due under the laws of the State of Missouri, or under the laws of the K. O. T. M. or under any other laws. Your husband was a member of an association, acting together for the purpose of providing life benefits or insurance at the least possible cost; and among other things, they agreed that if any of them should commit suicide, his beneficiary should receive twice the amount he had contributed to the Life Benefit Fund, but in no case to exceed the amount of the certificate. We have no knowledge of what you are talking about, some rich man's beneficiary

getting $8000, and if she did, or did not, it would not have any bearing in a case like this. She or he might have been entitled to it. The management would very much prefer that your husband had died in some other way so they could have paid it all. They have no interest in it except to carry out the agreements made by the members themselves.

" 'Respectfully yours,

" 'L. E. SISLER,

" 'Supreme R. K.'

"It is admitted that the plaintiff gave notice to the defendant prior to the institution of this suit; that the plaintiff did and would deny that the insured, Ferdinand G. Zinke, deceased, committed suicide, and that she claimed her statement in the original proof of death was erroneous and the result of mistake and misapprehension."

Counsel for the petitioner contend that the opinion of the Court of Appeals is contrary and repugnant to the following cases: Scott v. Realty Co., 241 Mo. 112; McCormick v. City of St. Louis, 166 Mo. 315; Pollman Coal Co. v. City of St. Louis, 145 Mo. 651.

In addition to the facts stated, counsel for Mrs. Zinke introduced evidence tending to prove that she never stated to the notary or to anyone else that her husband committed suicide; also that he died of brain or heart troubles. The company upon the other hand introduced evidence tending to show she did state that her husband committed suicide, and that that was the cause of his death.

I. In our opinion the Court of Appeals has failed to follow the law as announced by this court in the cases cited. There can be no denial of the fact that a part payment of a debt unquestionably due will not discharge the entire debt, even though receipted in full, though based upon an understanding or agreement to that effect, for the reason that there is no consideration to support the agreement. But as was held by the cases cited, where there is an honest doubt between the parties

as to the amount due, and after due consideration the creditor yields to the debtor's views and agrees to and accepts the amount which the latter concedes to be due and gives a receipt in full, and there is no fraud or other ground for equitable relief, the settlement is binding, for the reason that it comes within the principle of accord and satisfaction.

The receipt is not necessary, nor even the agreement to accept a part for the whole, where the creditor knows there is a reasonable doubt as to the amount due, and he accepts the part for the whole where the former is tendered in full satisfaction. Torrey v. Hardy, 196 S. W. 1100.

That there was a substantial doubt in the mind of the company as to the amount due Mrs. Zinke under the benefit certificate, there can be no doubt in the opinion of disinterested and fair-minded persons.

We are, therefore, of the opinion that the judgment of the Court of Appeals should be quashed, and it is so ordered.

*Graves* and *Walker, JJ.,* concur; *Faris, J.,* concurs in result; *Bond, C. J., Blair* and *Williams, JJ.,* dissent.